JUDGE BULLITT
delivered the opinion op the court:
Offutt, the indorsee, sued Johnson, the acceptor of two bills of exchange, in the Franklin circuit court, and the summons was served in Franklin county. , Upon the calling, of the cause Johnson moved to quash the service of the summons, upon proof that he was a citizen and resident, of Scott county, and representing that county as a member of the House of Representatives when the suit was brought, and the summons *20 served and at the time of said motion, and that the legislature was then in session. The motion was overruled.
Johnson then moved the court to require the plaintiff to file the second part of the bill of exchange sued on, the suit having been brought upon the first part. But the court refused to require the plaintiff to file the same or to give any account of it.
Defendant then moved for a continuance till the next term, relying upon the facts above mentioned. That motion was overruled, and no answer having been filed, judgment was rendered against him, from which he appealed.
In the case of Catlett vs. Morton, 4 Littell, 122, i.twas decided that a member of the legislature was not privileged against being served with any process in a civil suit not requiring bail, either by the constitution of 1799 or the act of 1795. (2 Statute Law, 1,111.)
The present constitution is the same upon this subject as that of 1799.
The act of 1795 declared, that “ no person or persons shall, under any pretense, directly or indirectly, by any ways or means whatever, arrest, assault, menace, or otherwise disturb the person of a member,-during his privilege, except on legal process for treason, felony, or breach of the peace.” In Catlett vs. Morton the court apparently attached some importance to the fact, that the act prohibited only a disturbance of the person of a member.
The statute now in force declares, “ that the members of the general assembly shall, in no wise.be disturbed or embarrassed in the great and important business of legislation. They shall not, directly or indirectly, by any ways or means, be arrested, menaced or otherwise disturbed during the existence of their constitutional privilege, except on legal process for treason, felony, breach of the peace or misdemeanor.” (Revised Statutes, chap. 62, sec. 1.)
It is contended that the word person was omitted from this statute, in view of the decision in Catlett vs. Morton, and for the purpose of prohibiting anything which might disturb the thoughts or agitate the feelings of a member attending the legislature.
*21 The statute, thus construed, would, during a session of the legislature, make it unlawful for a sheriff to sell a member’s properly under an execution previously levied; or to levy an execution ón his property under a judgment previously rendered; or for a member’s friend to warn him of any pending misfortune; because any of those things might, to some extent, divert his thoughts from his public duties, and disturb that serenity of mind which is insisted upon as being necessary for their performance.
A man has no right to complain, or to feel disturbed, because he is sued for failing to perform his contracts. But it is said, that if a member can be sued, he may be harrassed by unjust demands; and, therefore, the object was to prevent him from being sued at all during his privilege. To give the statute that effect, the court, whenever a member is sued, must take judicial notice of the fact, and of its own motion dismiss or continue the cause, which would be impossible. The defendant, to take advantage of his privilege, must show that he is a member; and it can give him but little additional trouble to prepare an answer, if he has a defense, and an affidavit that he cannot prepare for trial without neglecting his legislative duties ; or an affidavit showing that he has a defense, but cannot prepare his answer wdthout such neglect.; in either of which cases he should have a continuance. But if he has no defense, the rendition of a judgment against him is not, in our opinion, such a disturbance as the statute was designed to prohibit. The difference between the phraseology of this statute, and of that of 1795, furnishes no sufficient reason to believe that the legislature intended to change the law. (Overfield vs. Sutton, 1 Met., 621.) The motion to quash the service of the summons was properly overruled.
The only authorities cited in support of the motion requiring the plaintiff to file the second part of the bill of exchange, are 2 Greenleuf's Ev., 154; 2 Starkie's Ev., 142, (6th Am. Ed.) Greenleaf refers to no authority except Starkie, and Starkie refers to no authority. The only case we have found upon the subject is that of Dowens & Co. vs. Church, 13 Peters, 205, in which it was decided, for reasons which seem to us entirely *22 satisfactory, and which we need not repeat, that in a suit by an indorsee against an indorser, for non-acceptance of a bill, the production of that part of the bill which had been protested for non-acceptance was prima facie sufficient to entitle the plaintiff to a judgment; and that it was matter of defense on the other side, to show either that some other bill of the set had been presented and accepted, or paid ; or that it had been presented at an earlier time, and dishonored and due notice had not been given ; or that another person is the proper holder, and has given notice of his title to the party sued; or that some other ground of defense exists, which displaces theprima facie title made out by the plaintiff. The same principle applies in a suit by an indorsee against the acceptor, where, as in this case, the part of the bill sued upon has been accepted.
The judgment is affirmed.